IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| CHRISTINA DENISE SIMINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:21-00615-CV-RK |
| | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY; | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Before the Court is Plaintiff's appeal brought under 42 U.S.C. § 405(g) seeking review of Defendant Commissioner of Social Security Administration's ("SSA") denial of disability benefits as rendered in a decision by an Administrative Law Judge ("ALJ"). For the reasons below, the decision of the ALJ is **AFFIRMED**.

**Standard of Review**

The Court's review of the ALJ's decision to deny disability benefits is limited to determining if the decision "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)). "Substantial evidence is less than a preponderance of the evidence, but is 'such relevant evidence as a reasonable mind would find adequate to support the [ALJ's] conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). In determining whether existing evidence is substantial, the Court takes into account "evidence that detracts from the [ALJ's] decision as well as evidence that supports it." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted). "If the ALJ's decision is supported by substantial evidence, [the Court] may not reverse even if substantial evidence would support the opposite outcome or [the Court] would have decided differently." *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014) (citing *Davis*, 239 F.3d at 966). The Court does not "re-weigh the evidence presented to the ALJ." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Baldwin v. Barnhart*, 349 F.3d

549, 555 (8th Cir. 2003)). The Court must "defer heavily to the findings and conclusions of the [ALJ]." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (citation omitted).

## Discussion

By way of overview, the ALJ determined that Plaintiff, a younger individual, has the following severe impairments: seizure disorder and anemia. However, the ALJ found that none of Plaintiff's impairments, whether considered alone or in combination , meet or medically equal the criteria of one of the listed impairments in 20 CFR Pt. 404, Subpt. P, App. 1 ("Listing"). Additionally, the ALJ found that despite her limitations, Plaintiff retained the residual functional capacity ("RFC") since August 2, 2019, to perform light work as defined in 20 CFR § 416.967(b) except she can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, and crawl. She should never have exposure to hazards, machinery, and heights. She should have exposure to no more than moderate, level 3 noise, such as a business office. She cannot perform commercial driving. She should have no exposure to flashing lights. And, she must avoid frequent exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation. Although the ALJ found that Plaintiff is unable to perform any past relevant work, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, Plaintiff can perform jobs that exist in significant numbers in the national economy.

On appeal, Plaintiff argues the ALJ's RFC is unsupported by substantial evidence and is legally flawed.[1]

### I. The RFC is Supported by Substantial Evidence

Plaintiff first contends the ALJ's decision is not supported by substantial evidence. Specifically, Plaintiff argues because the ALJ "rejected all of the opinions of record as to Plaintiff's functional limitations," the ALJ should have obtained a medical opinion as to Plaintiff's functional limitations. (Doc. 11 at 9.)

As recognized by the Eighth Circuit Court of Appeals in *Singh v. Apfel*, 222 F.3d 448 (8th Cir. 2000), and *Nevland v. Apfel*, 204 F.3d 853 (8th Cir. 2000), the formulation of the RFC is a medical question and must be based on *some* medical evidence. However, there is no requirement that an RFC finding be supported by a specific medical opinion. *Hensley v. Colvin*, 829 F.3d 926,

---

[1] The Court finds much of Defendant's brief persuasive. Portions are incorporated without further attribution.

2

932 (8th Cir. 2016); *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012). The RFC is not based only on medical evidence; rather, an ALJ has the duty, before step four, to formulate the RFC based on all the relevant evidence of record. *See McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011); *see also Lockwood v. Colvin,* 627 F. App'x. 575, 577 (8th Cir. 2015) (claimant's attack of the RFC finding on basis that it was not supported by "some medical evidence. . . is an incomplete statement of the relevant RFC inquiry established by a host of our prior Social Security disability cases"; although the record did not contain an opinion from treating or examining source, ALJ properly assessed claimant's RFC based on his review of the medical records).

Here, the record contained the opinions of Dr. Dennis McCall, D.O., and Dr. Donna McGraw, D.O., state agency physicians, as to Plaintiff's limitations. The ALJ found their findings and opinions not entirely persuasive, but the ALJ afforded some weight to their findings and opinions in formulating a more restrictive RFC. The ALJ also cited substantial medical evidence (Tr. 19-20). *See Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) ("substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support a conclusion"); *Hensley*, 829 F.3d at 932 (in the absence of medical opinion evidence, medical records can provide affirmative medical evidence supporting an RFC; with a medical record adequately developed, an ALJ need not seek additional information or order a consultative examination).

An ALJ is "not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). Instead, an ALJ may properly develop an RFC based on all of the evidence. *Lockwood*, 627 F. App'x at 576. "SSR 96-8p requires only that the evidence, both medical and non-medical, be discussed in a way that would support each conclusion, not that each conclusion must be individually discussed and independently supported." *Wilfong v. Berryhill*, No. 4:17-cv-2747-SNLJ, 2018 WL 4489453, at *4 (Sept. 19, 2018). Here, the ALJ may not have "linked [his] analysis to each particular RFC limitation, but the totality of [his] analysis makes clear [he] followed the evidentiary pathway set forth in SSR 96-8p." *Id.* at *4.

3

Plaintiff next argues Dr. McCall and Dr. McGraw's opinions are not substantial evidence to support the ALJ's decision, and that the ALJ erred in rejecting the opinions of Dr. John Sand as unpersuasive. (Doc. 11 at 10-13.)

In evaluating Plaintiff's RFC and subjective allegations, the ALJ properly considered the opinion evidence. (Tr. 18-19, 21-22.) *See* 20 C.F.R. § 416.929(c)(3)(vii). In November 2019, Dr. John Sand, M.D., stated that Plaintiff's seizures were "so frequent that she is unable to be employed, but otherwise has a normal neurologic exam." (Tr. 810.) State agency consultants reviewed the record and found that Plaintiff could perform a range of light work with frequent postural activities. (Tr. 56-69, 67-70.)

The ALJ's consideration of the opinion evidence is supported by substantial evidence. Because Plaintiff applied for benefits on or after March 27, 2017, the ALJ applied the new set of regulations for evaluating the opinions of the non-examining state agency medical consultants. The revised regulations redefine how evidence is categorized, including "medical opinion" and "prior administrative findings," and how an ALJ will consider these categories of evidence in making the RFC determination. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c, 416.913(a), & 416.920c.

The ALJ found Dr. Sand's statement regarding Plaintiff's ability to maintain employment not persuasive. (Tr. 21.) The ALJ properly noted that the conclusory statement about maintaining employment went to the ultimate issue of disability and, as such, was a statement on a matter reserved to the Commissioner. (Tr. 21.) Statements that an individual is unable to work or perform regular or continuing work are statements on an issue reserved to the Commissioner and are inherently neither valuable nor persuasive. *See* 20 C.F.R. § 416.920b(c)(3)(i). In fact, the regulations provide that an ALJ need not "provide any analysis" about how he or she considered such a statement. 20 C.F.R. § 416.920b(c). The ALJ noted that Dr. Sand did not assess Plaintiff's functionality on a function-by-function basis or support the opinion with objective evidence. (Tr. 21.) 20 C.F.R. § 416.920c(c)(1). Instead, the conclusory opinion that seizure activity frequency would preclude work appears to be based entirely on Plaintiff's subjective complaints. (Tr. 21.) As noted by the ALJ, no seizures were observed by any medical professional. (Tr. 21.) Plaintiff argues that the ALJ improperly considered that Dr. Sand did not observe any seizure activity. It is not just that there was no seizure activity during the examination though; rather, because there was no objective medical support for seizures before Dr. Sand, the only basis for Dr. Sand's

statement was Plaintiff's subjective allegations. Evaluating a claimant's subjective complaints, however, is entirely within the purview of the ALJ as factfinder, and the ALJ did not find Plaintiff's subjective allegations consistent with the record.

Following Dr. Sand's evaluation, State agency medical consultants reviewed the medical records. (Tr. 56-59, 67-70.) State agency medical consultants are highly qualified experts in Social Security disability evaluation. 20 C.F.R. § 416.913a(b)(1). In December 2019, Dr. McGraw reviewed the medical records and found that Plaintiff could perform a range of light work. (Tr. 56-59.) Dr. McGraw opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, sit for 6 hours, and stand and walk for 6 hours. (Tr. 57.) Plaintiff could frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, and occasionally climb ladders, ropes, or scaffolds. (Tr. 57.) She must avoid moderate exposure to hazards. (Tr. 58). In February 2020, Dr. McCall reviewed the updated medical records and affirmed Dr. McGraw's opinion. (Tr. 68-69.) The State agency medical consultants considered Dr. Sand's opinion and found it was based solely on Plaintiff's subjective statements. (Tr. 59, 69.)

Plaintiff suggests that the ALJ improperly relied on the prior administrative medical findings. Plaintiff's reliance on case law prior to the revised regulations is inapposite, however, because the older rules located at 20 C.F.R. § 416.927 and the wide body of case law associated with the old regulations do not apply to clams filed on or after March 27, 2017. As the new regulations state, the ALJ must consider the prior administrative medical findings of State agency medical consultants because such consultants are highly qualified experts in Social Security disability evaluation. *See* 20 C.F.R. § 416.913a. In the narrative section, Dr. McGraw stated that Plaintiff could perform sedentary work. (Tr. 59.) However, the doctor subsequently amended the assessment to light work because he did "not think exertional limitations were warranted." (Tr. 55.)

Consistent with the prior administrative medical findings, the ALJ found that Plaintiff could perform a range of light work as defined in the regulations. (Tr. 18, 57, 68). However, the ALJ found the findings not entirely persuasive. (Tr. 20-21.) The ALJ noted that the State agency medical consultants relied on the poor documentation of seizures at the time of their findings. (Tr. 21.) The record as a whole supported a higher degree of limitations than indicated by the State agency medical consultants. (Tr. 21.)

The ALJ also properly considered the subsequently submitted medical records evaluating Plaintiff's seizures. (Tr. 21). *See* 20 C.F.R. § 416.920c(c)(5). The ALJ noted that an EEG was normal. (Tr. 21, 838, 845, 850.) Despite the normal EEG, Plaintiff was diagnosed with seizures and received treatment for the first time. (Tr. 21.) As such, the ALJ found that the subsequent medical records supported the inclusion of seizure precautions. (Tr. 21.) Instead of frequent postural activities, the ALJ limited Plaintiff to occasional postural activities. (Tr. 18, 57, 68.) The State agency medical consultants limited Plaintiff to less than moderate exposure to hazards. (Tr. 58, 69.) However, the ALJ found that Plaintiff could have no exposure to hazards, machinery, or heights. (Tr. 18.) The ALJ also determined that Plaintiff could not perform commercial driving and could have no exposure to flashing lights. (Tr. 18.) Finally, the ALJ found that Plaintiff must avoid frequent exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation. (Tr. 18.)

In sum, the ALJ fully complied with the regulations and considered the record as a whole. Plaintiff has submitted no medical opinion that her physical impairments caused greater limitations than those included in the RFC. The ALJ's reasonable reliance on an opinion from a highly qualified expert is within the zone of choice. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (substantial evidence means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

Plaintiff also challenges the ALJ's reliance on "'sparse' evidence, 'little' treatment, and not well documented seizures in rejecting Plaintiff's allegations of disability," because the ALJ "ignored" that Plaintiff did not have health insurance before June of 2020 and that it was difficult for her to see a physician at "the height of COVID[.]" (Doc. 11 at 13-14.) Plaintiff further argues the ALJ should not have cited the fact that Plaintiff did not go to the hospital for her seizures and should have accounted for the need for a low-stress work environment in the RFC. (Doc. 11 at 14.)

Plaintiff's argument fails to acknowledge the full context of her impairments. Plaintiff alleged that she had seizures since the age of 11. Despite these impairments, Plaintiff did not receive treatment for the seizures until August 2020, at which time she was 37 years of age. While Plaintiff did not have Medicaid through Missouri prior to June 2020, she had Medicaid coverage prior to moving to Missouri. (Tr. 523.) Plaintiff's decision not to seek treatment prior to moving to Missouri, while she had Medicaid during the time she alleges that she was disabled, belies her

claim that the lack of insurance was the reason she did not seek treatment. Further, there is no indication that Plaintiff sought treatment from her county health department or the emergency room. *See Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (the record contained no evidence showing that Plaintiff was ever denied treatment due to financial reasons). Once she finally sought treatment, the frequency of her seizures improved. (Tr. 20.) Plaintiff notes that she was told not to go to the emergency room for her seizures unless the seizures lasted more than five minutes. (Doc. 11 at 14.) The issue is not just the seizures, but her allegations that she routinely fell as a result of these seizures. (Tr. 41, 809, 819.) As noted by the ALJ, she did not seek medical treatment from any source, including the emergency room, for injuries caused by these falls. (Tr. 21.) As such, the ALJ properly considered Plaintiff's minimal medical treatment in assessing her subjective allegations. (Tr. 19-21.)

Plaintiff also contends the ALJ should have accounted for Plaintiff's right upper extremity impairment (numbness) in the RFC, should have addressed her right ear deafness at step two and in the RFC, and should have accounted for gait abnormalities in the RFC. (Doc. 11 at 14-15.)

Plaintiff cites to findings of decreased sensation in her right arm to support greater limitations. (Tr. 810, 841). First, while Dr. Sand found decreased sensation, the doctor did not opine that Plaintiff had any resulting limitations. (Tr. 810.) Second, other medical records show that Plaintiff retained intact sensation. (Tr. 563, 602.) The ALJ also considered the objective testing. An August 2020 MRI revealed mild asymmetry in the left hippocampus and mild colpocephaly. (Tr. 20, 842.) The same month, an EEG was normal. (Tr. 20-21, 838, 845, 850.) Plaintiff claims that the ALJ failed to account for her alleged deafness in her right ear, but the ALJ specifically limited her to exposure to moderate noise. (Tr. 18.) As to gait abnormalities, on physical examination, Plaintiff could move all of her extremities and had full ranges of motion and full strength. (Tr. 563, 602, 810, 825, 833, 840, 856.) While Plaintiff's neurologist noted an antalgic gait, he also noted that she had normal tandem gait and normal heel and toe walking. (Tr. 840.) Other medical records showed that Plaintiff retained normal gait, stance, and heel, toe, and tandem walking. (Tr. 803, 810, 825, 833, 856.) The evidence during the relevant period did not support Plaintiff's subjective allegations. (Tr. 19-21.)

The RFC is supported by substantial evidence, and Plaintiff's argument is without merit.

## II. The RFC is Not Legally Flawed

Plaintiff next contends the ALJ's decision is legally flawed. In particular, Plaintiff contends the ALJ failed to assess the RFC on a function-by-function basis, including Plaintiff's abilities to sit, walk, stand, push, and pull. (Doc. 11 at 15-16.)

This complaint is without merit. The ALJ found that Plaintiff could perform a range of light work as defined in the regulations. (Tr. 18.) *Cf. Gray v. Kijakazi*, No. 4:20-CV-00575-MDH, 2021 WL 3891585, at *6 (W.D. Mo. Aug. 31, 2021) (explaining that a limitation to a range of sedentary work with additional nonexertional restrictions sufficiently assessed RFC on a function-by-function basis). The regulations define light work as that which involves lifting no more than 20 pounds at a time and frequent lifting or carrying of objects weighing up to 10 pounds. *See* 20 C.F.R. § 416.967(b). Light work includes a good deal of walking and standing. *See* 20 C.F.R. § 416.967(b). By referencing the regulations' definitions of light work, the Court is able to identify the limitations the ALJ found supported by the record. Further, the ALJ outlined numerous postural and environmental limitations. (Tr. 18.) The Court reviews the record to ensure that the ALJ did not disregard evidence or ignore potential limitations, but it does not require an ALJ to mechanically list and reject every possible limitation. *See Nash v. Comm'r of Soc. Sec.*, 907 F.3d 1086, 1090-91 (8th Cir. 2018) (citations omitted). Where all of the functions that the ALJ specifically addressed in the RFC were those in which he found a limitation, a court can reasonably believe that those functions that he omitted were those that were not limited. *See Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003). The ALJ did not need to make an explicit finding regarding Plaintiff's limitations if the ALJ's finding is supported by the record as a whole. *See McCoy*, 648 F.3d at 615 ("McCoy also argues that the ALJ erred by failing to make explicit findings regarding McCoy's ability to stoop, stand, walk, handle, and reach. We review the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but we do not require an ALJ to mechanically list and reject every possible limitation.").

Finally, Plaintiff asserts that because the RFC and resulting hypothetical were flawed as she argued, the VE's testimony cannot be substantial evidence. Because the Court finds the RFC was not flawed, the Court rejects this argument.

**Conclusion**[2]

Having carefully reviewed the record before the Court and the parties' submissions on appeal, the Court concludes that substantial evidence on the record as a whole supports the ALJ's decision for the reasons set forth in the Commissioner's brief.

IT IS THEREFORE ORDERED that the decision of the ALJ is **AFFIRMED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: September 16, 2022

---

[2] In so ruling, the Court is mindful that reversal of the ALJ's denial of disability benefits should not occur "so long as the ALJ's decision falls within the 'available zone of choice.'" *Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008) (citations omitted). "The decision of the ALJ is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." *Id.* (citation omitted). Instead, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Id.* (citation omitted). Here, Plaintiff points to no legal error, and substantial evidence in the record supports the ALJ's decision.